## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KELLI FLOREK, <br><br> *Plaintiff*, <br><br> v. <br><br> CREIGHTON UNIVERSITY, KATIE WADAS-THALKEN, RHONDA JONES a/k/a RHONDA REESON and MARYANN SKRABAL, <br><br> *Defendants*. | Civil Action No. _____ <br><br><br> **COMPLAINT** <br><br> **(Jury Demanded)** |

COMES NOW, Plaintiff KELLI FLOREK, by and through her undersigned counsel, and hereby complains and alleges against the above-named Defendant, based upon knowledge, information and a reasonable belief derived therefrom, as follows:

### INTRODUCTION

1.      Ms. Florek seeks damages to remedy a breach of contractual rights, tortious interference, unjust enrichment, and violations of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") committed by Defendants Creighton University ("Creighton"), Katie Wadas-Thalken ("Dean Thalken"), Rhonda Jones ("Dr. Jones"), and Maryann Skrabal ("Dr. Skrabal").

2.      While a student in Creighton's Doctor of Pharmacy program, Ms. Florek was denied necessary accommodations and subjected to ongoing hostility and retaliation for her advocacy and complaints related to Creighton's failure to accommodate her, including multiple retaliatory citations.

3.      As a result of the Defendants' retaliatory actions, Ms. Florek was placed on probation and ultimately dismissed from Creighton, without being provided the procedures guaranteed by Creighton's Student Handbook.

1

4.      These retaliatory and hostile actions and resulting dismissal wrongfully interfered with Ms. Florek's contract to become a junior partner in a pharmacy following her graduation.

5.      Accordingly, Ms. Florek now petitions this Court for redress in the form of damages, costs and reasonable attorney's fees in relation to the breach of contract, tortious interference and violation of the ADA and Section 504.

## PARTIES

6.      Plaintiff, Kelli Florek, is currently a resident of the State of Hawaii and, at all relevant times, was a student at Creighton.

7.      Defendant, Creighton University, is a private university with its principal place of business in Omaha, Nebraska.

8.      Defendant Katie Wadas-Thalken is a resident of Nebraska and was at all times the Assistant Dean for Academic Affairs at Creighton's School of Pharmacy and Health Professions. Dean Wadas-Thalken is sued in her individual capacity.

9.      Defendant Rhonda Jones, also known as Rhonda Reeson, is a resident of Nebraska and was at all times a Professor and Associate Director, Office of Experiential Education at Creighton's School of Pharmacy and Health Professions.  Dr. Jones is sued in her individual capacity.

10.      Defendant Maryann Skrabal is a resident of Nebraska and was at all times a Professor at Creighton's School of Pharmacy and Health Professions.  Dr. Skrabal is sued in her individual capacity.

11.      At all times relevant hereto, Defendant Creighton was in a contractual relationship with Ms. Florek.

12.     At all times relevant hereto, and in all actions described herein, Defendant's actions took place in Omaha, Nebraska.

## JURISDICTION & VENUE

13.     Subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1331 (federal question) and pursuant to 28 U.S.C. § 1332 (diversity of citizens) because the amount in controversy exceeds $75,000.00, and the parties are diverse.   This Court has supplemental jurisdiction of the Nebraska state law claims pursuant to 28 U.S.C. § 1367.  This Court has personal jurisdiction over the parties because, *inter alia*, Defendant is located in the District of Nebraska.

14.     Venue is proper in the District of Nebraska pursuant to 28 U.S.C. § 1391(b) in that the claims arose in this district, and Defendant is located in this district.

15.     Costs and attorney's fees are sought.

## GENERAL FACTUAL ALLEGATIONS

16.     In August 2018, Ms. Florek began her studies as doctoral student at Creighton's School of Pharmacy and Health Professions through distance learning from her home in Hawaii and was originally scheduled to graduate in May 2022.

17.     During the summer 2019, Ms. Florek was diagnosed with a traumatic brain injury ("TBI") following a concussion.  As a result of the TBI, Ms. Florek experienced periodic light sensitivity, difficulty with speech, blurry vision, eye fatigue, hearing difficulty and debilitating migraines that prevented her from working or completing school assignments for at least 48 hours.

18.     On August 14, 2019, Ms. Florek applied for accommodations for her disability through Creighton's Office of Disability Accommodations ("ODA").  Ms. Florek provided documentation of her disability, including her ongoing symptoms and need for accommodations such as extended time on tests, quizzes and other assignments; a distraction-free environment for

tests and quizzes; limited screen time; the use of blue light filtering glasses; and the ability to delay exams for up to 48 hours, and further noted that anticipated healing time from her injury was at least one year.  Ms. Florek also signed a release for ODA to obtain any necessary information from her medical providers to determine appropriate accommodations.

19.     While Creighton initially approved her requests, it did so as "academic supports" and explicitly informed her that she was not entitled to disability accommodations because her symptoms had not yet lasted more than six months and was not diagnosed as intractable.

20.     Following Ms. Florek's disclosure of her disability and her request for accommodations, Dean Kelly Nystrom treated Ms. Florek with hostility.

21.     In September 2019, Ms. Florek informed her professor that she might experience connectivity issues during an exam due to an expected storm and her semi-rural location.  She did experience such difficulties but ultimately completed the exam.

22.     Despite the fact that Creighton's distance program was in fact designed to allow students in rural areas, such as Ms. Florek, to obtain a pharmacy degree, in the hopes they would remain in their more rural areas, Dean Nystrom attempted to penalize Ms. Florek for her location and for the storm, which she could not control.  Following the exam, Dean Nystrom emailed Ms. Florek to inform her that she was not meeting the proper connectivity requirements to be a distance student, suggested she may need move and threatened sanctions and the imposition of an end of semester make up exam in the event of further issues.

23.     On October 16, 2019, Ms. Florek made a formal complaint to the Dean of Pharmacy, Evan T. Robinson, in regard to the harassment and threats made by Dean Nystrom. However, Dean Robinson dismissed the complaint and told Ms. Florek that it had no merit.

4

24.     Further, despite the "approval" of the requested supports for Ms. Florek's TBI, Creighton professors frequently failed to provide them, and Ms. Florek frequently had to follow up and repeatedly request and advocate for her accommodations.

25.     In November 2019, additional emails had to be sent to her professors in order for Ms. Florek to receive the proper accommodations.

26.     Creighton required Ms. Florek to prove her need for supports again in January 2020, and she again provided sufficient documentation of her disability and her need for accommodations.

27.     Nonetheless, in January and February 2020, Creighton faculty failed to provide her the extended time to which she was entitled on quizzes.  Even after Ms. Florek followed up and was assured the issue had been fixed, one of her professors failed, for a third time, to provide the necessary accommodations.

28.     In addition to failing to provide "approved" supports, Creighton also outright refused to provide certain necessary accommodations.  Specifically, in January 2020, Creighton informed Ms. Florek that it would not provide her with extended time on her case presentations, a form of testing or assessment in the program.

29.     Ms. Florek struggled during her case presentations, experiencing some difficulty with her speech fluency, a symptom of her TBI, that slowed her down, and a result of the lack of extended time, she struggled to finish.  Rather than supporting her, the faculty judging her case study expressed impatience and annoyance, telling her she was repeating herself and trying to hurry her along, and then telling her she was incompetent because of her speech issues.  Dean Wadas-Thalken even went so far as to tell Ms. Florek that she should drop out even though Ms. Florek has never failed a class.

30.     When Ms. Florek complained about the denial of accommodations to ODA and Michael Monaghan, the Chair of the Department of Pharmacy Practice, she was again told that Creighton refused to provide extended time on the case presentations.

31.     Then, in Spring 2021, despite Ms. Florek's documented disability, Creighton removed her necessary accommodations just before her exams.

32.     Just prior to one of her exams, Ms. Florek had a debilitating migraine and her vision difficulties were exacerbated, making it impossible for her to take her exam, which was on the computer.  Despite timely informing her professor and requesting the 72-hour exam extension accommodation to which she was entitled, Creighton refused to provide it.

33.     Further, when Ms. Florek requested to schedule an exam at a later time to ensure that she could take her exam in a quiet, distraction-free location, as entitled per her accommodations, Creighton denied this request.  Ms. Florek later learned another student was permitted to take the exam during a later time.

34.     When Ms. Florek contacted Creighton's Disability Services for assistance, she was informed they lost her paperwork and the information from her doctor.  Ms. Florek requested that they immediately reinstate her accommodations, which had at that point been approved for nearly two years.  Dean Wadas-Thalken then got involved and refused to allow the office to reinstate Ms. Florek's accommodations.

35.     In May 2021, after objecting to the failure to provide her accommodations, Ms. Florek went to Creighton's campus in person for the summer skills labs and an Introductory Pharmacy Practice Experience ("IPPE").  Rather than allowing Ms. Florek to select her IPPE, as other students were permitted to as a means of pursuing training in their area of professional

interest, Dr. Rhonda Jones selected it for her.   Further, Creighton again refused to provide her with any accommodations.

36.     Upon Ms. Florek's return to Hawaii, she was required to take a PCR COVID-19 test from an approved provider within 72 hours of traveling in order to comply with Hawaii's entry requirements.  Ms. Florek had previously expressed significant concern regarding traveling from Hawaii to the mainland and Creighton's close scheduling of her next IPPE in Hawaii because of the ongoing travel restrictions and potential quarantine and requested that it be rescheduled or shifted to remote.  Creighton refused and assured her that she could utilize Creighton's own PCR testing for her return to Hawaii; thus, the immediate start of her next IPPE upon her return would not be a problem.

37.     Ms. Florek subsequently discovered Creighton's lab was not an approved provider for Hawaii.  Accordingly, she attempted to obtain a COVID test near Creighton's campus within the required window and was told by Creighton to schedule an appointment that did not conflict with her IPPE schedule.

38.     However, appointments at the only approved provider near campus were only available to book three to four days in advance, were offered on a first come, first served basis and filled quickly.  Both the earliest and latest possible appointments conflicted with her IPPE schedule.  Ms. Florek ultimately scheduled the latest appointment available, but she was not permitted to leave in time to obtain the COVID test.

39.     As a result, upon her return to Hawaii, she was subject to the state's mandatory 10-day quarantine and was unable to begin her next IPPE as scheduled.  Ms. Florek promptly informed the IPPE that she was unable to start on schedule due to the mandated quarantine.

40.     In response, Dr. Jones and Maryann Z. Skrabal in the Office of Experiential Education ("OEE") at Creighton threatened Ms. Florek with a failing grade for the IPPE – the one she was unable to complete at all – if she did not break the mandatory quarantine despite the fact that Hawaii had penalties, including substantial fines and possible jail time, if she did not comply with quarantine requirements.

41.     Ms. Florek protested, noting that she had no choice in the matter, but Dr. Jones confirmed that the failing grade and an additional professional behavior citation would proceed.

42.     Throughout the month of June 2021, OEE continuously harassed Ms. Florek for being in quarantine even though it was their own actions that resulted in Ms. Florek's required quarantine.  Ms. Florek asked OEE to stop harassing her and noted that their actions were based on and in retaliation for her advocacy for her disability.

43.     Dr. Skrabal and Dr. Jones ultimately issued her two unprofessional citations, one for having to quarantine and one for her "tone" in accusing them of retaliation, in June 2021.

44.     Ms. Florek went to complete the IPPE after quarantine.  Creighton made this process very difficult for her.  On June 21, 2021, Dr. Wadas-Thalken scheduled a faculty meeting, with over thirty faculty members, to discuss Ms. Florek's unprofessional behavior citations and the possibility of a probationary event.  The faculty meeting was scheduled during the time of her IPPE so that Ms. Florek could not participate.

45.     Ultimately, Creighton placed Ms. Florek on probation as a result of her unprofessional behavior citations, placing her at risk of dismissal.

46.     Although she again was not given her accommodations, she completed the IPPE and received satisfactory ratings from the preceptor, or supervisor, of the experience.  However, Creighton failed her despite her preceptor's rating and her successful completion of the IPPE.

47.     Ms. Florek attempted to appeal her IPPE grade, her citations, and the probationary event.  However, Dean Wadas-Thalken told her she could not appeal her citations or the probation event.

48.     On June 29, 2021, Ms. Florek emailed the President of Creighton University citing disability discrimination, harassment, threats, and retaliation.  However, Ms. Florek was told that she needed to work out a resolution with the Dean of Pharmacy.

49.     Creighton's harassment and adverse treatment of Ms. Florek continued.  In October 2020, Ms. Florek had confirmed and finalized her Advanced Pharmacy Practical Experiences ("APPE"), the final experiences necessary for her graduation, and had arranged to complete them at Kamehameha Pharmacy, an approved APPE placement for Creighton.

50.     In August 2019, following her entry into Creighton's program, Ms. Florek entered into a contract with the owner of Kamehameha Pharmacy, Greg Harmon, to become a partner upon her graduation from Creighton.

51.     The arranged APPE experiences not only met all requirements for Creighton and the Pharmacy program but also enabled Ms. Florek to undertake this advanced experience in the very rural setting in which she would be working after Creighton – one of the Creighton Program's stated goals.

52.     Further, Ms. Florek had already informed Mr. Harmon of, and he had confirmed he would be able to provide, all necessary accommodations for her disability.

53.     However, on July 2, 2021, only a few days after Ms. Florek's complaint to the President, Dr. Jones notified Greg Harmon, Ms. Florek's APPE Preceptor at Kamehameha Pharmacy, that Ms. Florek's APPE schedule would be changing, and she could only do three of the six required APPEs with him.

54.     While students generally choose their APPEs, as they are the opportunity to explore various areas of the profession of interest to the student, no one from Creighton spoke with or consulted Ms. Florek prior to making this change.

55.     Further, after cancelling Ms. Florek's APPEs at Kamehameha, which were to occur in person, Dr. Jones assigned Ms. Florek to multiple APPEs, including one Managed Care, an area she did not choose, and remote APPEs, which could not accommodate and in fact exacerbated her disability.  The revised schedule additionally prevented Ms. Florek from obtaining her medication therapy management certification on time, a certification required by Creighton and which she would have timely completed under the original schedule at Kamehameha.

56.     In August 2021, after protesting the change in scheduled APPEs, which severely impacted his planned staffing, Mr. Harmon informed the preceptor for Ms. Florek's next APPE, her Managed Care APPE, that Ms. Florek had not selected that APPE.  The preceptor accordingly cancelled the APPE with Creighton.

57.     In response, Dr. Jones issued Ms. Florek – who had not had any contact with the Managed Care preceptor – yet another unprofessional behavior citation.

58.     On August 30, 2021, Ms. Florek filed a complaint with the Dean of Pharmacy, Evan Robinson, informing him that Dr. Jones, Dr. Wadas-Thalken, and Dr. Skrabal were continuing to harass her through their actions and communications and were exacerbating her disability.  She asked that they cease communications with her and that she have another point of contact.  Dean Robinson refused and noted that consequences would result from her not communicating with them.

59.     Ms. Florek completed her initial two APPEs at Kamehameha Pharmacy with excellent ratings, earning a grade of A.

60.     However, on October 11, 2021, Dr. Skrabal emailed Mr. Harmon to inform him that Ms. Florek was no longer a student at Creighton.

61.     Creighton had dismissed Ms. Florek on September 17, 2021.  Due to the stress created by Creighton's harassment, however, Ms. Florek was unaware of the dismissal notice until Mr. Harmon contacted her regarding her status as a student, and she located the email sent by Dean Wadas-Thalken.  In fact, well after her dismissal, she had received communications regarding program requirements and tuition charges.  Once she learned of her dismissal, it was too late to appeal.  After Ms. Florek received notice of the dismissal, the grade for both of her APPEs was changed from an A to a Withdrawal.

62.     Creighton's actions greatly damaged Ms. Florek.  Ms. Florek lost a contractual opportunity to work alongside Mr. Harmon as a junior partner as a result of Creighton's actions.

63.     Creighton also took steps to have Ms. Florek's fourth year internship license revoked thereby further damaging her future employment prospects.

64.     As a result of Creighton's conduct, Ms. Florek has lost her personal and financial investment in several years of education and opportunities for career advancement and has suffered severe emotional and physical distress.

65.     It has been necessary for Ms. Florek to obtain the services of an attorney to prosecute this action, and she is entitled to an award of attorney's fees and costs of suit incurred herein.

///

///

## FIRST CAUSE OF ACTION

### *VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12182, et seq., and SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 701, et seq.*
### *(DISABILITY DISCRIMINATION INCLUDING FAILURE TO ACCOMMODATE)*
### Against Creighton University

66.     Each of the allegations set forth in paragraphs 1 through 65, inclusive, are hereby incorporated by this reference as if realleged fully herein.

67.     Title III of the ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

68.     Section 504 provides, "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...."  29 U.S.C. § 794(a).  Because the language of these two provisions is substantially similar, claims under both acts are generally analyzed together.

69.     Title III of the ADA and Section 504 require covered entities to make reasonable modifications and accommodations unless such accommodations or modifications would fundamentally alter the nature of the services, privileges, advantages or accommodations provided by the entity.

70.     Creighton is subject to the mandate of the ADA as an institution of public accommodation and receives federal financial assistance, as defined by 29 U.S.C. § 794, including through the receipt of federal student aid funds, and, as such, may not discriminate against a person because of her disabilities.

71.     Ms. Florek suffers from a traumatic brain injury, which is a physical impairment that causes her periodic light sensitivity, difficulty with speech, blurry vision, eye fatigue, hearing difficulty and debilitating migraines that prevented her from working or completing school assignments, and thus substantially limits major life activities; including, but not limited to, her ability to concentrate, speak, see, hear, work and learn.

72.     Creighton was aware of Ms. Florek's disabilities and need for accommodations in order to have equal and meaningful access to its educational program by August 2019, when Ms. Florek contacted the ODA to request accommodations and explained her injury, the resulting symptoms, and her need for accommodations and provided medical documentation.

73.     Ms. Florek was qualified to attend Creighton's Doctor of Pharmacy program, as she had been admitted and was meeting all academic standards.

74.     As a result of her symptoms, Ms. Florek required multiple accommodations to have meaningful access and an equal opportunity to benefit from and participate in Creighton's educational program, including extended time on tests, quizzes and other assignments; a distraction-free environment for tests and quizzes; limited screen time; the use of blue light filtering glasses; and the ability to delay exams for up to 48 and eventually 72 hours.

75.     Creighton discriminated against Ms. Florek on the basis of her disability when it:

   a)    Refused to provide her with formal disability accommodations because she had not yet experienced symptoms for more than 6 months, and her injury was not diagnosed as "intractable."

   b)    Failed to provide her with the "supports" she was offered, including failing to provide her with extended time for all tests, quizzes and other

assignment; the ability to schedule her exam so she could have a distraction free environment; and the ability to limit screen time.

c)      Removed all of her accommodations in Spring 2021, despite knowing of her ongoing disability and need for such accommodations.

d)      Refusing to provide her with necessary and reasonable accommodations for her IPPE and APPEs.

e)      Penalized her for her disability related symptoms and need for accommodations.

76.     Creighton's discriminatory actions were taken solely because of Ms. Florek's disability, including her disability-related symptoms and need for and use of accommodations.

77.     As a direct and proximate result of the unlawful discrimination against Ms. Florek in violation of the ADA and Section 504 by Creighton, Ms. Florek has suffered and continues to suffer damages academically, financially, physically and emotionally in an amount to be proven at trial.

78.     It has been necessary for Ms. Florek to obtain the services of an attorney to prosecute this action, and Ms. Florek is entitled to an award of attorney's fees and costs of suit incurred herein.

## SECOND CAUSE OF ACTION

### *VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12203(a), and SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 701, et seq.* **(RETALIATION)**

### Against Creighton University

79.     Each of the allegations set forth in paragraphs 1 through 65, inclusive, are hereby incorporated by this reference as if realleged fully herein.

80.    The ADA's retaliation statute provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).   The standard for retaliation claims under Section 504 is the same as the standard for retaliation claims under the ADA.

81.    Ms. Florek engaged in protected activity including but not limited to when she notified Creighton and its faculty of her disabilities; she requested and gave notice to Creighton of her need for accommodations and modifications; she made use of her accommodations and modifications; she advocated for her right to accommodations and modifications and she complained about and/or protested discrimination, retaliation and the failure to provide such accommodations.

82.    Ms. Florek was subjected to several adverse actions directly related to her requests for, need for, and use of accommodations and modifications and her advocacy for her rights, including but not limited to when:

a)    Following her request for accommodations, Dean Nystrom informed Ms. Florek she was not meeting distance learning connectivity requirements and threatened sanctions and the imposition of a make-up exam.

b)    Following her repeated complaints, Creighton removed her accommodations.

c)      Following her objection to the removal of her accommodations, Dean Wadas-Thalken refused to allow the Office of Disability Accommodations to reinstate Ms. Florek's accommodations.

d)      Following her objection to the removal of her accommodations and her repeated complaints, Creighton did not permit her to choose her IPPE, prevented her from timely obtaining the COVID-19 test required to return to Hawaii, issued a poor grade for the IPPE rotation she could not attend as a result of the ensuing quarantine despite her ultimately successful completion of it, and then issued an unprofessional behavior citation.

e)      Creighton issued her unprofessional behavior citations for her complaints about discrimination and retaliation and subsequently placing her on academic probation as a result of those citations.

f)      Creighton scheduled the faculty meeting regarding her citations and potential academic probation during a time Creighton knew she could not attend.

g)      Creighton changed her APPE schedule and assignments to electives she did not choose, placements that could not accommodate her disabilities, and a schedule that did not enable her to obtain necessary certifications.

h)      Creighton issued her an unprofessional behavior citation for Mr. Harmon's call to the preceptor of her managed care APPE and the preceptor's subsequent cancellation of the APPE.

16

        i)      Creighton dismissed her as a result of that and previously retaliatory citations and failed to provide appropriate notice of the dismissal or the opportunity to appeal.

83.     There is a direct and causal connection between Ms. Florek's protected activity and following mistreatment and hostility from Creighton and its staff and faculty.

84.     There is a direct and causal connection between Ms. Florek's requests for accommodations, advocacy, and complaints about failures to accommodate, discrimination or retaliation and her mistreatment, given that the events happened in close succession or were based on previous retaliatory actions.

85.     Creighton wrongly retaliated against Ms. Florek, all in violation of her rights pursuant to the ADA and Section 504, inflicting mental and emotional distress, and causing further damage to her health, well-being, academic and professional careers, because she is disabled.

86.     As a direct and proximate result of the unlawful retaliation against Ms. Florek in violation of the ADA and Section 504 by Creighton, Ms. Florek has suffered and continues to suffer damages academically, financially, and emotionally in an amount to be proven at trial.

87.     It has been necessary for Ms. Florek to obtain the services of an attorney to prosecute this action, and Ms. Florek is entitled to an award of attorney's fees and costs of suit incurred herein.

### THIRD CAUSE OF ACTION

***BREACH OF CONTRACT***
**Against Creighton University**

88.     Each of the allegations set forth in paragraphs 1 through 65, inclusive, are hereby incorporated by this reference as if realleged fully herein.

89.     Courts recognize that the basic legal relation between a student and a private university or college is contractual in nature.

90.     Students are entitled to rely upon the procedures and guidelines a school voluntarily promulgates in any disciplinary action, and a school may not dismiss a student for academic reasons where the decision was made arbitrarily, capriciously or in bad faith.

91.     When Ms. Florek enrolled in Creighton's Doctor of Pharmacy program, Creighton entered into an express and implied contract with her in connection with rights explicitly guaranteed by it pursuant to the program policies found in the Student Handbook.

92.     Creighton's Student Handbook requires a specific disciplinary process under its Behavioral Misconduct Procedures.   Prior to imposing discipline such as a dismissal for Behavioral Misconduct, Creighton must provide Ms. Florek with written notice of the alleged violation, an investigation report, and a hearing.   Following the hearing decision, the Student Handbook provides for an opportunity to appeal.   Specifically, the Student Handbook provides that:

> A student will receive written notification of the alleged violation(s)…
> …
> In cases where a mutually agreeable decision cannot be made, the student will have their case referred and decided by the appropriate hearing board.
> …
> The respondent receives advance written notice of the alleged violation(s), time, date, and place of the hearing typically within two working days before the scheduled date/time hearing. The respondent and their advisor will be allowed the opportunity to review and respond to any materials or evidence that will be presented at the hearing.  In addition, the investigative report given to respondent to review includes:
>
> - Summary of Investigation
> - Reports submitted to the Office of Community Standards and Wellbeing (University or community reports)
> - Evidence or materials associated with investigation; and
> - Statement from respondent and, if offered, the impact statement from complainant

- Other evidence from the complainant or respondent must be turned in 24 hours prior to the hearing.
- The hearing packet will be updated and redistributed as necessary when new materials are turned into the investigator.

…

A decision reached by the University Committee on Student Discipline may be appealed by the respondent to the Vice Provost for Student Life.

(*see* Student Handbook pages 57-63).

93.     At all times, Ms. Florek fulfilled her obligations under the contract by timely paying tuition and fees to Creighton.

94.     Creighton breached its contract with Ms. Florek when it dismissed her without proper notice, receipt of an investigation report, or a hearing and, as a consequence of the failure to properly notify her, denied her the opportunity to appeal.

95.     Creighton also breached its contract with her when it scheduled a faculty meeting regarding her unprofessional behavior citations, and a potential academic probation decision, during a time it knew she would be unable to attend.

96.     Creighton's Student Handbook also contains a prohibition against retaliation. Specifically, the handbook states the following:

Creighton University believes that each individual should be treated with respect and dignity and that any form of harassment, discrimination, and/or retaliation is a violation of human dignity. The University condemns and prohibits these and will take all reasonable efforts to prevent such conduct and promptly address conduct found to be in violation of this policy.

Students have the right to be free from retaliation. Threats or other forms of intimidation or retribution against a student who files a complaint, participates in an investigation, appears as a witness at a Standards Panel, or opposes an unlawful act, discriminatory practice or policy, are prohibited and subject to university student discipline procedures.

97.     Creighton breached this term when it retaliated against Ms. Florek after she complained about a professor not following Creighton's exam policies.

98.     Creighton also issued several citations to Ms. Florek for complaining about harassment by faculty, faculty's failure to accommodate, and discriminatory measures taken by faculty members.

99.     Ultimately, Ms. Florek received a failing grade for an IPPE, was deprived of required certification for graduation, placed on probation, and eventually dismissed from the program.  These actions were all an accumulation of the faculty's retaliation against Ms. Florek.

100.     Creighton's failure to abide by its policies and fulfill its contractual obligations have cost Ms. Florek her investment of several years in her education and her tuition, fees and other expenses, and she continues to suffer damages academically, financially, physically and emotionally.

101.     As a result of the breaches of contract committed against Ms. Florek, she has been damaged as described in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

### FOURTH CAUSE OF ACTION

*TORTIOUS INTERFERENCE WITH CONTRACT*
**Against all Defendants**

102.     Each of the allegations set forth in paragraphs 1 through 65, inclusive, are hereby incorporated by this reference as if realleged fully herein.

103.     In August 2019, Ms. Florek entered into a partnership agreement with Mr. Harmon under which Ms. Florek would begin working for Mr. Harmon following her graduation from Creighton and, over the subsequent five years, eventually become an equal partner with Mr. Harmon.

104.     Creighton, Dr. Jones, Dr. Skrabal and Dr. Wadas-Thalken all were aware that Ms. Florek was intended to take over part ownership of Mr. Harmon's pharmacy following her graduation from Creighton and had an agreement to become junior partner, based on their

conversations with Ms. Florek regarding her plans and questions they had asked about her future at the pharmacy.

105.    Defendants intentionally and unjustly interfered with Ms. Florek's contract with Mr. Harmon when:

a)    Dr. Wadas-Thalken refused to allow Ms. Florek's accommodations to be reinstated.

b)    Dr. Skrabal issued Ms. Florek an unprofessional behavior citation because she was required to quarantine upon her return to Hawaii.

c)    Dr. Jones issued Ms. Florek an unprofessional behavior citation for her complaints of retaliation.

d)    Dr. Wadas-Thalken scheduled a faculty meeting regarding Ms. Florek's citations at a time she knew Ms. Florek could not attend.

e)    Dr. Jones prevented Ms. Florek from choosing her IPPE and APPE electives and prevented Ms. Florek from completing her electives at Kamehameha Pharmacy, as scheduled.

f)    Dr. Jones issued Ms. Florek another unprofessional behavior citation because Mr. Harmon called another preceptor and that preceptor cancelled Ms. Florek's APPE.

g)    Creighton wrongfully and unjustly dismissed Ms. Florek.

106.    As a direct and proximate result Defendants' actions, Ms. Florek was denied the benefits of her contract with Mr. Harmon, dismissed from Creighton, and has suffered and continues to suffer irreparable harm, injury, and damages; including, but not limited to, monetary damages, time and resources, career opportunities and earning capacity, physical, mental and

emotional distress, anxiety and mental anguish, humiliation and embarrassment, and loss of personal and professional reputation, all in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

107.    It has been necessary for Ms. Florek to obtain the services of an attorney to prosecute this action, and Ms. Florek is entitled to an award of attorney's fees and costs of suit incurred herein.

### FIFTH CAUSE OF ACTION

*UNJUST ENRICHMENT*
**Against Defendant Creighton University**

108.    Each of the allegations set forth in paragraphs 1 through 65, inclusive, are hereby incorporated by this reference as if realleged fully herein.

109.    From August 2018 through September 2021, Ms. Florek paid Creighton tuition and fees for a program leading to a Doctor of Pharmacy degree.

110.    Creighton accepted and retained those fees but undertook a campaign of illegal discrimination and retaliation against Ms. Florek culminating in her wrongful dismissal and unjustly preventing her from obtaining her degree.

111.    As a result of Creighton's dismissal, Ms. Florek has lost all progress towards her degree.  Students dismissed from a program at one school generally are unable to enroll in a program at another and, if they do, generally are unable to transfer credits or resume their education where they left off.  Accordingly, Creighton's actions resulted not only in Ms. Florek receiving no value for the tuition and fees paid but also placed her in a worse position than she would have been had she never attended in the first place.

112.    Under such circumstances, it would be unjust to allow Creighton to retain the tuition and fees paid by Ms. Florek.

113.    It has been necessary for Ms. Florek to obtain the services of an attorney to prosecute this action, and Ms. Florek is entitled to an award of attorney's fees and costs of suit incurred herein.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Ms. Florek demands a jury trial for all issues in this matter.

## RELIEF REQUESTED

WHEREFORE, Ms. Florek prays that this Honorable Court enter judgment in her favor, and against the Defendant: (a) for general and compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) to be determined at trial; (b) for reimbursement of the full amount of Ms. Florek's tuition, fees and other expenses plus accrued interest in an amount to be proven at trial; (c) for compensatory damages, including lost earnings; (d) for reimbursement of the full amount of expenses Ms. Florek incurred; (e) for reimbursement of the full amount of Ms. Florek's attorney's fees; and (f) further relief as justice requires.

DATED this 1st day of June, 2022.

Respectfully Submitted,

_/s/ Jason J. Bach_____
Jason J. Bach
THE BACH LAW FIRM, LLC
7881 West Charleston Blvd., Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
Email:  jbach@bachlawfirm.com
*Attorney for Plaintiff*